IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SMITH,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF BERKELEY, CITY OF BERKELEY MEDICAL CANNABIS COMMISSION, THE BERKELEY CITY COUNCIL, its various employees, BERKELEY PATIENTS GROUP, INC., BERKELEY PATIENTS CARE COLLECTIVE, d/b/a Community Flavor, LLC, CANNABIS BUYERS CLUB OF BERKELEY and DOES 1 to 20, inclusive,<br><br>    Defendants.<br>_____/ | No. C 15-04227 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

**INTRODUCTION**

In this civil action claiming violations of the Racketeer Influenced and Corrupt Organizations Act, five defendants move to dismiss all claims against them. For the reasons stated below, defendants' motions to dismiss are **GRANTED**.

**STATEMENT**

This action concerns plaintiff Christopher Smith's allegation that defendants the City of Berkeley, its Medical Cannabis Commission, and its City Council (collectively, "City defendants") have joined with three medical marijuana dispensaries, defendants Cannabis Buyers Club of Berkeley, Berkeley Patients Group, Inc., and Berkeley Patients Care Collective

1  (collectively, "dispensary defendants") to form an illegal for-profit cannabis monopoly in
2  Berkeley. Smith contends this scheme has prevented him from dispensing medical marijuana.

3  In 2004, the City Council passed an ordinance limiting the number of medical marijuana
4  dispensaries that could operate in the city to three and placing certain geographic restrictions on
5  the location of those dispensaries, although any dispensaries operating at the time could
6  continue to operate notwithstanding those limitations. That ordinance authorized the City
7  Manager to issue regulations to implement that plan (City Defs.' Request for Judicial Notice,
8  Exh. B, Berkeley Municipal Code § 12.26.110 (2004)).

9  The City Manager did not issue such regulations. Instead, in 2008, the Medical
10  Cannabis Commission determined, based on research conducted by the staff of the Berkeley
11  City Planning Department, that only our three dispensary defendants could continue to operate
12  within the municipal code. The City also established a Peer Review Committee, staffed by
13  representatives designated by marijuana collectives and dispensaries to steer developments in
14  Berkeley's regulation of marijuana businesses including by recommending legislative
15  initiatives.

16  Smith cultivated and distributed medical marijuana from his home prior to 2004, but the
17  City never contacted him to assess whether his business qualified as a dispensary at the time of
18  the 2004 amendment (Amd. Compl. ¶¶ 21–42).[1]

19  Smith asserts that all three of the dispensary defendants operated for profit and that the
20  City defendants knew about the dispensary defendants' for-profit nature. Smith alleges that the
21  City defendants insulated the dispensary defendants by exempting them from further regulations
22  enacted in 2014, such as a scrutinizing application process for a fourth dispensary (pursuant to
23  an amendment to the City ordinance governing dispensaries), denying Smith's own application
24  to operate a fourth dispensary, commencing litigation to close his dispensaries, first in 2012
25  then again in 2015. Although Smith does not explain how, he alleges that he lost one of his
26  residences as a result of this litigation (*id.* ¶¶ 58–101).

---

28  [1] Smith, along with several others, is presently petitioning for a writ of mandate in state court challenging the failure to establish criteria for the implementation of Section 12.26.110. *Smith v. City of Berkeley*, No. RG15767085 (Cal. Super. Ct.) (Judge Robert McGuinness).

2

1   Smith commenced this action with a verified complaint in federal court in September
2   2015. He brings civil RICO claims contending that defendants conspired to establish a
3   monopoly of for-profit medical marijuana dispensaries in violation of state and municipal laws,
4   to the exclusion of his alleged non-profit dispensary. City defendants jointly moved to dismiss.
5   Cannabis Buyers Club of Berkeley filed its own motion to dismiss. Berkeley Patients Group
6   joined in the other defendants' motions to dismiss.[2] This order follows full briefing (including
7   one round of supplemental briefs) and oral argument.[3]

**ANALYSIS**

Smith's claims all flow from his own interest in cultivating, distributing, and selling medical marijuana — acts that violate the federal Controlled Substances Act. 21 U.S.C. 841(a)(1), 844(a) (unlawful to "manufacture, distribute, or dispense" or to knowingly or intentionally "possess" a controlled substance, such as marijuana). It is a longstanding maxim of law that "[n]o court will lend its aid to a party who founds his claim for redress upon an illegal act." *The Florida*, 101 U.S. 37, 43 (1879). The denial of relief based on that maxim (known by the latin phrase *ex turpi causa non oritur actio*) is "not for the sake of the defendant, but because [courts] will not lend their aid to such a plaintiff." *Ewell v. Daggs*, 108 U.S. 143, 149 (1883). This maxim has applied to preclude, *inter alia*, the enforcement of a usurious contract and a claim to an illegally sunken ship as a "prize of war." *Ibid.*; *The Florida*, 101 U.S. at 43.

---

[2] Berkeley Patients Care Collective has not appeared in this action to date. Nevertheless, because this order addresses defects with Smith's claims as a whole, this order dismisses the complaint as to that defendant as well.

[3] Smith's opposition brief was due on October 27, but he did not timely file a response. On November 5, Smith was ordered to respond to the pending motions and to show cause why he had not filed a response to the pending motions by noon on November 6 (Dkt. No. 16). Just after noon, Smith filed his opposition brief, and an hour later he filed a proposed amended complaint (Dkt. Nos. 17–18). Several hours later, he filed a response to the order to show cause, and counsel filed a declaration in support explaining that the tardiness was the result of counsel's calendaring error, but counsel's declaration only accounts for a two-day error, and counsel admitted they did not begin working on the brief until the order to show cause issued — ten days after the deadline had passed (Dkt Nos. 19–20). Notwithstanding the inadequacy of counsel's response, this order addresses defendants' motions to dismiss on the merits.

Although counsel for Smith specifically asked for the opportunity to submit a supplemental brief at oral argument, Smith did not submit such a brief.

3

In *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138 (1968), the Supreme Court cautioned against "invoking broad common-law barriers to relief where a private suit serves important public purposes." Specifically, *Perma Life* considered whether the plaintiffs' antitrust claims could be barred by the principle "*in pari delicto*," which bars a plaintiff from bringing a claim if it is "of equal fault" in performing the same kind of illegal conduct as the defendants. There, the plaintiffs claimed the defendants had conspired to restrain the market for automobile parts, although the plaintiffs had participated in that alleged conspiracy for some time. *Perma Life* held that the plaintiffs' claims could survive notwithstanding their own fault in participating in the conspiracy because "the law encourages [their] suit to further the overriding public policy in favor of competition." *Id.* at 139. The reasoning in *Perma Life* does not extend to our case.

Here, there is no overriding public interest that warrants protecting Smith's private suit. Smith seeks to eliminate alleged racketeering and corruption from an industry that is undisputedly illegal, no different in that regard from a murder-for-hire business. Thus, *Perma Life* is inapposite. This Court will not lend aid to Smith's efforts to operate an illegal business. *See The Florida*, 101 U.S. at 43.

To the extent Smith seeks relief based on the loss of his home, that alleged injury followed from the enforcement of state and municipal law and judicial decisions based thereon. Plainly, the enforcement of the law is not a predicate act that can give rise to a RICO violation. 18 U.S.C. 1961(1)(A).

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss are hereby **GRANTED**. Leave to amend will not be granted due to futility. The Clerk shall please **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: December 21, 2015.

WILLIAM ALSUP

4

UNITED STATES DISTRICT JUDGE